ELIZA SATCHWELL, &c., complainant,

*v.*

FRANCES WARNER, defendant.

[Decided July 26th, 1940.]

■

*Mr. Frederick B. Richards (Mr. Jerome C. Eisenberg),* for the complainant.

*Messrs. Mulligan & Koenig,* for the defendant.

BIGELOW, V. C.

In this suit for specific performance, the question is whether complainant can give a marketable title, and that in turn depends primarily upon whether Mrs. Emma E. Cattus, as executrix of and trustee under the will of her mother, Sarah E. Embury, had, in 1907, power to convey the property.

Mrs. Embury, a resident of New York, died in 1887, seized of an undivided one-half of a tract of land in Newark, of which the premises involved in the suit are a part. She left four children, Peter A., Alphonse L., Arthur D., and Emma (now Mrs. Cattus), and a grandchild, Emma E. Cattus, the younger, the daughter of a deceased child. By her will, Mrs. Embury directed that the residue of her estate, in which was included her interest in the Newark tract, be divided into shares, one for each of these five. It is Arthur's share with which we are concerned. This she devised to "Peter A. Embury, John E. Ellison and Emma Embury, my executors and executrix hereinafter named, in trust" for Arthur for life and upon his death, to "be divided by the said Peter A. Embury, John E. Ellison and Emma Embury, or by those of them who qualify and take upon themselves the burden of settling up my estate, equally among my other children then living, or if any be dead, among their lawful issue, share and share alike, *per stirpes* and not *per capita."*

"I hereby authorize and empower my said executors hereinafter named, or such of them as may qualify, to sell any or all of my real estate, at any time, and for any purpose."

Lastly, she appointed the three executors whom I have already named.

The next link in the title which need be mentioned, was a partition suit instituted in the Court of Chancery of New Jersey in 1895 by the trustees under the will of Peter A. Embury, who had died two years earlier. Defendants were Ellison "sole acting executor and trustee under the last will and testament of Sarah E. Embury, deceased." Peter's widow and children, the children of Alphonse, and the grandchild Emma E. Cattus, the younger. Mrs. Cattus, the testatrix' daughter, who was not a party, was omitted because she had conveyed her beneficial interest in the land to Peter.

The bill for partition averred that the tract of land which was held in common could not be divided among the owners thereof without great prejudice to their interests, and prayed, should it so appear to the court, that the land be sold and the proceeds divided. The Chancellor, however, found that a division was practicable and so actual partition was made. The part of the tract which includes the lot now owned by Mrs. Satchwell was set off in severalty to Ellison "as trustee for Arthur D. Embury." The decree confirming the report of the partition commissioners, ordered the parties to release to each other by deed in fee-simple the parcels as allotted, "and that in executing each of said deeds, all the parties to this suit shall join, except the party to whom such deed shall be executed."

Four or five years after the partition, the Surrogate's Court of New York county (where the will had been proved) removed Ellison "from his office as testamentary trustee under the last will and testament of Sarah E. Embury deceased," and appointed a substitute trustee in his stead. The same court a little later approved his account as executor and discharged him from that office. No mention of the Newark land appears in these proceedings.

In 1907, Mrs. Cattus (named Emma Embury in the will) applied to the Essex county surrogate to probate an exemplified copy of the will and to issue letters testamentary. This he did. Two weeks later, "as sole acting executor of the will of Sarah Embury and as sole acting trustee of estate of

Arthur D. Embury," she conveyed the premises now in dispute to William R. Ward, under whom complainant claims title.

The partition suit is an essential part of complainant's chain of title. Since Mrs. Embury, the testatrix, had only a half interest in the land, Mrs. Cattus, as executrix or trustee, could convey to Mr. Ward only a half interest, except for the partition. So we must assume whatever facts are necessary to establish the validity of that proceeding, and especially that, at the time of the suit, Ellison was sole executor and trustee.

By common law, if a devise is made to several persons upon trust and some refuse to accept it, the whole estate vests in those who do accept, in the same manner as if the others were dead or were not named in the will. *In re Stevenson, 3 Paige (N. Y.) 420; King v. Donnelly, 5 Paige 46;* Peter A. Embury was dead; the refusal of Mrs. Cattus to accept the devise must be taken as a fact. Arthur's share of Mrs. Embury's residuary estate, devised to the same persons who were named as executors, became vested in Ellison as trustee, upon the trusts specified in the will. The office of trustee under the will and that of executor were distinct and separable, and in his capacity of executor, Ellison took no title to the land. *Brush v. Young, 28 N. J. Law 237.* Upon the partition, Ellison's estate as trustee, in the part set-off to him, was the same as he had before in his undivided share. *1 Wash. Real Prop. 58.* Ellison's title as trustee was not affected in any way by the action of the New York court in removing him and appointing a successor. *1 Restatement of Trusts § 109; 3 Bogert, Trusts 1697.* His title could be divested by deed only, or by appropriate action in the proper court of New Jersey. *R. S. 3:7-64* is not to be construed to give to a foreign court authority to transfer title to land in our state.

Although Mrs. Cattus in 1907, or twenty years after the death of her mother, received letters testamentary, complainant does not assert that this had the effect of vesting title to the Newark land in Mrs. Cattus as trustee, either solely, or jointly with Ellison, or that the deed to Dr. Ward can be supported on such a theory. Complainant relies on the power

of sale supposedly possessed by Mrs. Cattus as executrix of the will, as distinct from any power vested in the trustee.

The power is given the executors in broad terms to be exercised "at any time and for any purpose," but I think it was terminated by the partition suit. When the partition was instituted, the power of sale extended to an undivided one-half of the whole tract, but not to the other half. By the partition, seven-tenths of the tract were set off to Peter's estate, one-tenth to Emma E. Cattus, the younger, one-tenth to Ellison as trustee for Alphonse Embury, and one-tenth to Ellison as trustee for Arthur. As I have already pointed out, Mrs. Satchwell cannot contend that the power of sale was unaffected by this proceeding and still extended to an undivided one-half of each lot that made up the whole tract, for in such case, the deed to Dr. Ward would have conveyed only a half interest, and Mrs. Satchwell's title would be defective. Nor can she well argue that the power became concentrated in the two shares set off to Ellison as trustee, leaving the balance free of the power. Ellison, as trustee, like Peter (to the extent of two-tenths ) and Emma, was a devisee under the will which created the power of sale. If the share of one was liberated from the power, the other shares likewise became free. The partition suit resulted in a distribution of the land itself to the devisees in lieu of the proceeds. Ellison as executor was a party and could have opposed the distribution on the ground, for example, that the land must be sold to pay debts. But he made no objection. The partition was inconsistent with the continuance of the power of sale and the power was thereby ended.

I surmise that the executor's power of sale would have been effectually cut off even if the executor had not been a party to the suit. Such a power is presumably created for the benefit of the estate, and not for the executor's personal advantage. It is to be used by him to convert land into money for the purposes of the estate. Generally this means paying debts and expenses of administration or else paying the devisees. A power which is given only for the latter purpose may be defeated by the election of all the beneficiaries to take the land rather than the proceeds. *Bolton* v. *Stretch, 30 N. J.*

*Eq. 536; Cronan* v. *Coll, 69 N. J. Eq. 694.* Where the power is created for the purpose of discharging testator's debts, and the personal estate is large enough to pay them, then the land vests in the devisee or heir, free of the power. *Sweeney* v. *Warren (N. Y.), 28 N. E. Rep. 413.* Where a power of sale is given generally—as in the second case cited, as well as in the suit before me—the beneficiaries may still defeat the power, unless a sale by the executor is appropriate to the purposes of administration; for if the personalty is sufficient to satisfy debts, then the devisees are the only persons concerned with the real estate or its proceeds.

The election of the beneficiaries may be evidenced by a conveyance to a third party, in which they all join, or by deeds to each other dividing the property, or by a partition suit where all are parties and none objects to a partition. Commonly, the executor with power of sale, joins in the deeds or is made a party to the partition suit. Such a joinder forestalls questions about the title and makes obvious that the power of sale is cut off. Thus in the partition suit brought by Peter A. Embury's estate, Ellison, as executor, was named a defendant and, as already stated, was ordered with the other parties to execute deeds of release for the several tracts. Whether or no such deeds were actually delivered is of little consequence. Our statute, now *R. S. 2:29-61,* gives to the decree the same effect on the title as if the releases had been executed conformably to the decree, and this notwithstanding the infancy of any party. *Price* v. *Sisson, 13 N. J. Eq. 168; 17 N. J. Eq. 475.* The decree operates as if Ellison, as executor of Mrs. Embury's will, had joined in a release of the premises to himself as trustee for Arthur D. Embury.

Complainant's counsel cite several cases from which they argue that the partition did not terminate the power of sale. *Condict* v. *Condict, 73 N. J. Eq. 301; Hatt* v. *Rich, 59 N. J. Eq. 492,* and *Story* v. *Palmer, 46 N. J. Eq. 1,* were partition suits in which the bills were dismissed in deference to an executor's power of sale. The significant feature of all three cases is that the court seems to have considered that a partition decree would terminate the power of sale.

*Cruikshank* v. *Parker, 52 N. J. Eq. 310,* was a bill for

specific performance by the vendor-trustees. There had been a prior suit in which land left by the testator had been partitioned and a portion had been set off to the trustees. The only problem on the specific performance bill, whether the trustees had power to sell, was solved in favor of the power. That decision would be more pertinent if the question before me was whether Ellison as trustee had power to sell and re-invest, instead of whether Mrs. Cattus, as executrix, could cut off Ellison's title as trustee.

While the power of sale under Mrs. Embury's will could be used "for any purpose," any purpose connected with the settlement of the estate is intended. Testatrix had been dead twenty years when the deed was given to Dr. Ward and presumably her estate had been wound up and distributed years before the attempted exercise of the power.

I conclude that the deed to Dr. Ward did not vest in him a marketable title.

Complainant also claims a marketable title through thirty years uninterrupted possession, relying here on *R. S. 2:25-1* and *2*. Although this claim may be well founded, complainant cannot press it. The contract of sale contains this provision:

"It is expressly understood and agreed that the title to the land * * * is not derived from * * * adverse or color of title possession."

This is part of a printed form which the parties used and which is published by a New York firm. Despite this circumstance, the contract must be interpreted in the light of New Jersey law and the prevalent condition of New Jersey titles. Very few of our titles can be traced to the Proprietors. Generally, they run back a hundred years or so, and no more; generally, it is impossible to prove actual possession for more than half a century, and generally no one can be pointed out who could make an arguable adverse claim to the land. While possession is an important element in these ordinary New Jersey titles, still they are not derived from "adverse or color of title possession" within the meaning of the contract.

In the case at bar, the paper title begins thirty-three years ago with the deed of Mrs. Cattus, as executrix, above dis-

cussed. Dr. Ward entered into possession upon receipt of the deed and he and his successors including complainant, have enjoyed uninterrupted, undisputed possession ever since, for three years more than the statutory period of thirty years. Unless barred by the statute, or by some estoppel *in pais,* legal title still remains in Ellison or his heirs, and equitable title—since Arthur D. Embury died in 1918—is vested in the issue of his brothers and sisters. The thirty years possession to be effective under *R. S. 2:25-1* and *2,* must be adverse. *Content* v. *Dalton, 121 N. J. Eq. 391; 122 N. J. Eq. 425.* Yet a title created by these sections is not "title by adverse possession" within the meaning of a covenant like the one under consideration. That expression must be taken to refer to the twenty-year statute, *R. S. 2:24-12* and *13. Model Plan Agency* v. *Diamond, 101 N. J. Eq. 786; Eckhouse* v. *Berwyn Estates, 106 N. J. Eq. 485.* But the parties to the present suit added the words "color of title possession" to which some meaning must be attached, giving to the entire phrase a more inclusive meaning.

I think the parties intended that defendant should not have to accept a title of the character which complainant offers to him.

Let the bill be dismissed.